IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-00143-01-CR-W-ODS |
| | ) | |
| ABRORKHODJA ASKARKHODJAEV, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

On May 6, 2009, the Grand Jury returned a forty-five count indictment against defendants Abrorkhodja Askarkhodjaev, Nodir Yunusov, Rustamjon Shukurov, Kristin Dougherty, Ilkham Fazilov, Viorel Simon, Nodirbek Abdoollayev, Andrew Cole, Sandjar Agzamov, Jakhongir Kakhkharov, Abdukakhar Azizkhodjaev, Alexandru Frumusache, Giant Labor Solutions, LLC, Crystal Management, Inc., and Five Star Cleaning, LLC. A 143-count superseding indictment was filed on January 7, 2010.[1] Defendants Askarkhodjaev and Dougherty are the only defendants currently set for trial.

This matter is currently before the Court on Abrorkhodja Askarkhodjaev's Motion to Dismiss Counts 89, 90, 92, 93, and 94 (Multiplicity) (doc #262).[2] Defendant's motion is in essence

---

[1] Defendants Yunusov, Shukurov and Agzamov have outstanding arrest warrants. Defendants Giant Labor Solutions, LLC, Crystal Management, Inc. and Five Star Cleaning, LLC were dismissed. Defendants Fazilov, Simon, Abdoollayev, Cole, Kakhkharov, Azizkhodjaev and Frumusache have entered guilty pleas.

[2] This motion which was filed with respect to counts contained in the First Superceding Indictment is nearly identical to Abrorkhodja Askarkhodjaev's Motion to Dismiss Counts 10, 11, 13, 14, and 15 (Multiplicity) (doc #71) which was filed with respect to those counts which charged the same offenses in the original Indictment. Given the filing of the First Superceding

two separate requests: (1) dismissal of Counts Eighty-Nine and Ninety or, in the alternative, an election by the government on which of these two counts it will proceed; and (2) dismissal of Counts Ninety-Two, Ninety-Three and Ninety-Four or, in the alternative, an election by the government on which of these three counts it will proceed. For the reasons set forth below, it is recommended that this motion be denied.

## I. DISCUSSION

Defendant argues first that by charging two counts of Visa Fraud (Counts Eighty-Nine and Ninety) that allegedly were committed on August 30, 2004, the government impermissibly fractionates a single course of conduct into two distinct offenses. Defendant next argues that by charging three counts of Financial Transactions Money Laundering (Counts Ninety-Two, Ninety-Three and Ninety-Four) for deposits arguably from the same source into the very same Bank of America account, the government impermissibly fractionates a single course of conduct into three distinct offenses. (Abrorkhodja Askarkhodjaev's Motion to Dismiss Counts 89, 90, 92, 93, and 94 (Multiplicity) (doc #262) at 1)

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause protects against multiple punishments for the same offense. See United States v. Ervasti, 201 F.3d 1029, 1039 (8th Cir. 2000); United States v. Bell, 90 F.3d 318, 320 (8th Cir. 1996). An indictment is multiplicitous when it charges a single offense in more than one count. See United States v. Roy, 408 F.3d 484, 491 (8th Cir. 2005); United States v. Christner, 66 F.3d 922, 927 (8th Cir. 1995); Gerberding v.

---

Indictment, Abrorkhodja Askarkhodjaev's Motion to Dismiss Counts 10, 11, 13, 14, and 15 (Multiplicity) (doc #71) is moot.

United States, 471 F.2d 55, 58 (8th Cir. 1973). "'The vice of this practice is that multiple sentences may result. Likewise, it may suggest to the jury that the defendant committed more than one crime.'" Christner, 66 F.3d at 927 (quoting United States v. Dixon, 921 F.2d 194, 196 (8th Cir. 1990)).

The fundamental question in determining whether separate counts in an indictment are multiplicitous or the "same offense" for double jeopardy purposes is the same elements analysis of Blockburger v. United States, 284 U.S. 299 (1932). This analysis provides: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304. See Rutledge v. United States, 517 U.S. 292, 297 (1996)("[f]or over half a century we have determined whether a defendant has been punished twice for the 'same offense' by applying the rule set forth in Blockburger"); United States v. Ervasti, 201 F.3d 1029, 1039 (8th Cir. 2000); DeMier v. United States, 616 F.2d 366, 370 (8th Cir. 1980).

Within the framework, the Court will analyze defendant's contention that Counts Eighty-Nine and Ninety are multiplicitous and that Counts Ninety-Two, Ninety-Three and Ninety-Four are, likewise, multiplicitous.

    A.    <u>Counts Eighty-Nine and Ninety</u>

Defendant's claim of multiplicity requires this Court to determine whether Counts Eighty-Nine and Ninety charge the same offense.

Counts Eighty-Nine and Ninety of the superseding indictment provide:

**COUNT EIGHTY-NINE**
**(Visa Fraud)**

The Grand Jury hereby incorporates by reference, and alleges herein, the

3

Case 4:09-cr-00143-ODS   Document 316   Filed 09/16/10   Page 3 of 12

factual allegations in paragraphs one through eighty-nine [sic] of this indictment.

On or about August 30, 2004, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, defendant herein, knowingly made and caused another to make under oath and knowingly subscribe as true under penalty of perjury under 28 U.S.C. § 1746, a false statement with respect to a material fact in an application required by the immigration laws and regulations prescribed thereunder, to wit, a Petition for Alien Relative, designated as INS Form I-130, that is, that ASKARKHODJAEV lived with his United States citizen wife, at 19004 E. 37th Terrace, Independence, Missouri, which statement ASKARKHODJAEV then and there knew was false, in that ASKARKHODJAEV resided apart from his United States Citizen wife who resided at 19004 E. 37th Terrace, Independence, Missouri.

All in violation of 18 U.S.C. §§ 1546(a) and 2.

## COUNT NINETY
### (Visa Fraud)

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine [sic] of this indictment.

On or about August 30, 2004, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, defendant herein, knowingly made and caused another to make under oath and knowingly subscribe as true under penalty of perjury under 28 U.S.C. § 1746, a false statement with respect to a material fact in an application required by the immigration laws and regulations prescribed thereunder, to wit, an Application to Register Permanent Residence, designated as INS Form I-485, that is, that ASKARKHODJAEV lived with his United States citizen wife, at 19004 E. 37th Terrace South, Independence, Missouri, which statement ASKARKHODJAEV then and there knew was false, in that ASKARKHODJAEV resided apart from his United States citizen wife who resided at 19004 E. 37th Terrace South, Independence, Missouri.

All in violation of 18 U.S.C. §§ 1546(a) and 2.

(First Superceding Indictment (doc #184) at 93-94)

In its response to defendant's motion to dismiss, the government explained the differences in INS Form I-130 (Count Eighty-Nine) and INS Form I-485 (Count Ninety) and the evidence it expects to present at trial:

4

The purpose of an I-130 visa petition is to establish that there is a legal relationship between the person filing the petition and the alien who is to benefit from the filing of the petition, such that the alien can apply for a change or adjustment of his immigration status based on that legal relationship. For example, the I-130 visa petition is typically filed by a United States citizen (the petitioner) who has married an alien (the beneficiary of the I-130 petition), so that the alien can then seek to have his immigration status changed or adjusted based on his marriage to the United States citizen.

That is precisely what happened in this case. In June of 2004, defendant Askarkhodjaev entered into a fraudulent marriage with United States citizen Danielle Holliger so that Askarkhodjaev, an alien from Uzbekistan, could then use this fraudulent marriage for the purpose of obtaining lawful permanent residence status in the United States. The INS Form I-130 identified in Count 89 was signed by Danielle Holliger, and Count 89 specifically alleges that Askarkhodjaev committed visa fraud by causing another (Holliger) to falsely state that he and his United States citizen wife (Holliger) were residing together.

Approval of an I-130 petition does not confer lawful immigration status but rather, it is a prerequisite for the nonresident alien to file INS Form I-485. While the I-130 petition is typically filed by a United States citizen, the INS Form I-485 is an application filed by the nonresident alien himself for the purpose of obtaining lawful permanent resident status. The two forms serve different purposes. After a United States citizen has filed an I-130 visa petition on behalf of an alien, the approved INS Form I-130 provides the evidentiary basis for the alien to apply for an adjustment of his status via INS Form I-485. Typically, both forms are submitted simultaneously in hopes of expediting an adjustment of the alien's status.

That is precisely what occurred in this case. The INS Form I-485 identified in Count 90 was signed by defendant Askarkhodjaev, and Count 90 specifically alleges that Askarkhodjaev committed visa fraud by falsely stating that he and his United States citizen wife (Holliger) were residing together. As it turns out, the INS Form I-130 and the Form I-485 were signed by Askarkhodjaev and Holliger on the same date.

(Government's Response in Opposition to Defendant's Motion for Dismissal of Multiplicitous Counts (doc #270) at 3-4)(footnote omitted)

The statute that defendant has been charged with violating in Counts Eighty-Nine and Ninety

5

(18 U.S.C. § 1546(a))[3] provides in part:

> **§ 1546. Fraud and misuse of visas, permits, and other documents**
>
> (a) ...
>
> Whoever knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact –
>
> Shall be fined under this title or imprisoned not more than ... 10 years (in the case of the first or second such offense, if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime) ... or both.

18 U.S.C. § 1546(a).

The Court finds that Counts Eighty-Nine and Ninety charge defendant with substantially different conduct requiring substantially different proof. See Blockburger v. United States, 284 U.S. 299, 304 (1932). A conviction on Count Eighty-Nine will require proof of defendant causing Danielle Holliger to make a false statement on INS Form I-130. In contrast, a conviction on Count Ninety will require proof of defendant making a false statement on INS Form I-485. Thus, these Counts charge two distinct acts.

Defendant argues that Counts Eighty-Nine and Ninety are nevertheless multiplicitous because they charge two separate acts committed during one transaction. A similar argument was made and rejected in United States v. Piggott, 1994 WL 228626 (W.D.N.Y. May 16, 1994). In Piggott, the defendant was charged with knowingly and willfully using a false passport containing

---

[3] Counts Eighty-Nine and Ninety also charge that defendant violated 18 U.S.C. § 2. Section 2 makes someone who aids and abets in the commission of an offense punishable as a principal.

his picture (Count II) and knowingly and willingly making a false statement regarding his identity to officers of the INS (Count III). Id. at *1. The conduct charged in each count took place on the same day and both counts charged a violation of the same statute, 18 U.S.C. § 1001.[4] The Piggott court wrote:

> Defendant argues that Counts II and III are nonetheless multiplicitous because they charge two separate acts committed during one "transaction." Defendant is incorrect. In United States v. Guzman, 781 F.2d 428 (5th Cir.), cert. denied, 475 U.S. 1143 (1986), the court explained that "Section 1001 declares it an offense to knowingly and willfully make a *single* false representation of material fact to a United States agency." Id. at 432 (emphasis added). The court held that the defendant, who falsely represented her name on two separate documents in connection with an application for supplemental security income benefits, could be charged for these acts in two separate counts of the indictment. The court wrote:
>
>> Where false statements are made in distinct and separate documents requiring different proof as to each statement, the filing of each false document constitutes a crime, and each filing may be alleged in a separate count of the indictment. United States v. Shaid, 730 F.2d 225, 231 (5th Cir.), cert. denied, 469 U.S. 844 (1984)(interpreting 18 U.S.C. § 1014, which makes it an offense to knowingly make false statements to a federally insured bank). In this case Leonor falsely represented her name on two different documents. Each misrepresentation constituted a separate offense under Section 1001 because the proof of each count was contained in a separate document. Each count therefore required evidence not necessary to prove the other count. Leonor attempts a distinction by pointing out that in this case the two false documents were presented in the same transaction and the same falsity is contained in both documents. The distinction fails. ...
>
> Id. at 432-33 ....

---

[4] 18 U.S.C. § 1001 provides in part: "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism ... imprisoned not more than 8 years, or both."

7

Similarly, in the present case defendant has been charged with both using a false document and making a false statement. Each count will require evidence not necessary to the other count. Therefore, under the Supreme Court's Blockburger standard, and the Fifth Circuit's reasoning in Guzman, Counts II and III of the Indictment are not multiplicitous. ...

Piggott, 1994 WL 228626 at *6.

Defendant relies on United States v. Olsowy, 836 F.2d 439 (9th Cir. 1987), cert. denied, 485 U.S. 991 (1988), in which the court held that a defendant was improperly charged in separate counts with making precisely the same false statements in response to the same question posed by the same government agent. However, even the Olsowy court agreed that false statements made in separate documents which are submitted at the same time can be charged separately. Id. at 443 n.4 ("We have previously upheld multiple counts under section 1001 for submitting separate documents at the same time, United States v. UCO Oil Co., 546 F.2d 833, 838-39 (9th Cir. 1976), cert. denied, 430 U.S. 966 (1977)").

Section 1546(a), like section 1001, declares it an offense to knowingly make a false statement in a *single* document. Counts Eighty-Nine and Ninety charge that the false statement was made in two distinct and separate documents (INS Forms I-130 and I-485) on the same day. On Form I-485, defendant is alleged to have made the false statement. On Form I-130, defendant is alleged to have caused another to make the false statement. As the Guzman court found, this Court finds that each misrepresentation constitutes a separate offense under Section 1546(a) because the proof of each count is contained in a separate document. Each count will require evidence not necessary to prove the other count. Therefore, Counts Eighty-Nine and Ninety are not multiplicitous.

8

### B. Counts Ninety-Two, Ninety-Three and Ninety-Four

Defendant's claim of multiplicity requires this Court to determine whether Counts Ninety-Two, Ninety-Three and Ninety-Four charge the same offense.

Counts Ninety-Two, Ninety-Three and Ninety-Four of the superseding indictment provide:

**COUNTS NINETY-TWO through NINETY-FOUR**
**(Financial Transactions Money Laundering)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine [sic] of this indictment.

On or about the dates listed below, in the Western District of Missouri, ABRORKHODJA ASKARKHODJAEV, defendant herein, knowingly engaged in a monetary transaction affecting interstate commerce, regarding property ASKARKHODJAEV knew was criminally derived, of a value greater than $10,000, which was derived from the proceeds of a specified unlawful activity, that is mail fraud, contrary to the provisions of 18 U.S.C. § 1341, as part of the aforementioned scheme to fraudulently obtain labor leasing contracts, as described in paragraphs one through fifty-nine of this indictment, in the below listed amounts, through deposits into his Bank of America account number 3462566680:

| Count | Defendant | Date of Deposit | Amount of Deposit |
|---|---|---|---|
| Ninety-Two | Askarkhodjaev | August 24, 2006 | $57,476.28 |
| Ninety-Three | Askarkhodjaev | June 19, 2007 | $44,906.44 |
| Ninety-Four | Askarkhodjaev | September 19, 2007 | $52,272.43 |

All in violation of 18 U.S.C. § 1957(a).

The statute that defendant has been charged with violating in Counts Ninety-Two, Ninety-Three and Ninety-Four (18 U.S.C. § 1957(a)) provides in part:

**§1957. Engaging in monetary transactions in property derived from specified unlawful activity**

(a) Whoever ... knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished ....

9

18 U.S.C. § 1957(a). The terms "monetary transaction" and "criminally derived property" are defined in section 1957 as follows:

> (1) the term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument ... by, through, or to a financial institution ...
>
> (2) the term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense ...

18 U.S.C. § 1957(f)(1) and (2).

Defendant argues that "[t]hese three counts charge violations of the same statute: 18 U.S.C. § 1957(a). These three counts all allege deposits into the very same Bank of America account arguably from the very same source: Westin Crown Center. These three counts have identical elements, the charges are the same, and are therefore multiplicitous." (Abrorkhodja Askarkhodjaev's Motion to Dismiss Counts 89, 90, 92, 93, and 94 (Multiplicity) (doc #262) at 7)

The government contends, and the Court agrees, that defendant's multiplicity argument has been expressly rejected by the Eighth Circuit Court of Appeals in United States v. Martin, 933 F.2d 609 (8th Cir. 1991). In Martin, the defendant argued that "payments of money ... for stock was of an ongoing nature and, therefore, constituted a single continuous transaction which could not form the basis of two separate criminal offenses." Id. at 611. The court found:

> Here, different evidence was necessary to prove each of the two counts. The transactions in Counts III and IV occurred on different dates and in different locations, and involved different amounts of money. Martin seems to argue that once he had engaged in one act of money laundering, he could continue to engage in subsequent acts of money laundering with impunity. Clearly this was not the intent of Congress. Instead, it is the individual acts of money laundering which are prohibited under section 1956(a)(1)(B)(i), and not the course of action which those individual acts may constitute. See Blockburger, supra, 284 U.S. at 302 ...

10

Id. Section 1957(a), like section 1956(a)(1)(B)(i),[5] refers to a single "transaction." Thus, it is the individual acts of money laundering which are prohibited under section 1957(a), and not the course of action which those individual acts may constitute. Cf. United States v. Holtzclaw, 131 F.3d 137, *2 (4th Cir. Nov. 26, 1997)(court rejected defendant's argument that money laundering counts were multiplicitous since they were based upon transfers of the same criminally derived property where money laundering counts involved separate, discrete monetary transactions).

As in Martin, the transactions in Counts Ninety-Two, Ninety-Three and Ninety-Four occurred on different dates and involved different amounts of money. Three separate negotiable instruments were involved. (See Government's Response in Opposition to Defendant's Motion for Dismissal of Multiplicitous Counts (doc #270) at 8) Different evidence will be necessary to prove each of these counts. Therefore, Counts Ninety-Two, Ninety-Three and Ninety-Four are not multiplicitous

## II. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Abrorkhodja Askarkhodjaev's Motion to Dismiss Counts 89, 90, 92, 93, and 94 (Multiplicity) (doc #262). It is further

---

[5]Section 1956(a)(1)(B)(i) provides: "(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... (B) knowing that the transaction is designed in whole or in part–(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity ... shall be sentenced ...."

11

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order finding Abrorkhodja Askarkhodjaev's Motion to Dismiss Counts 10, 11, 13, 14, and 15 (Multiplicity) (doc #71) moot.

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

        */s/ Sarah W. Hays*
        SARAH W. HAYS
        UNITED STATES MAGISTRATE JUDGE